IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **RANDY PARKER,** | |
| *Plaintiff*, | |
| -vs- | Case No. 3:22-CV-00282 |
| **SYNEOS HEALTH, LLC,** | Judge Aleta A. Trauger<br>JURY DEMAND |
| *Defendant*. | |

## FIRST AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, RANDY PARKER and pursuant to Rule 15 Fed.R.Civ.P., files this First Amended Complaint, and states as follows:

### I.
### Introduction

1. The COVID-19 pandemic has impacted every aspect of American life. Governments throughout the world have grappled with how to balance protection of one's health and yet maintain a semblance of normalcy in everyday life.

2. For the first time in the history of the United States, many employers have made a condition of their employees' continued employment that they inject into their bodies multiple times a foreign, experimental drug that lacks approval by the Federal Drug Administration.

3. Randy Parker is a former employee of Syneos Health, LLC. He brings this action for compensatory and statutory damages against Syneos Health, LLC for its

violation of Tenn. Code Ann. § 14-2-102, as well as the Tennessee Human Rights Act, codified at Tenn. Code Ann. § 4-21-101, arising out of its policy which segregates employees and intentionally discriminates against them based solely on their vaccination status.

4. This requirement inserts the employer into an individual's most personal and private medical decisions.

## II. JURISDCTION AND VENUE

5. This court is vested with subject matter and *in personam* jurisdiction to adjudicate all of the issues presented herein pursuant to Tenn. Code Ann. §29-1-143 and Tenn. Code Ann. §29-14-102.

6. Venue in this Court is proper pursuant to Tenn. Code Ann. §20-4-101.

## III. Parties

7. Plaintiff Randy Parker is an adult citizen and resident of Williamson County, Tennessee.

8. Defendant Syneos Health, LLC ("Syneos") is a Delaware Limited Liability Company. Its principal headquarters are located at 1030 Sync Street, Morrisville, North Carolina. Process may be served on its registered agent in the State of Tennessee: United Agent Group, Inc., 205 Powell Place, Brentwood, Tennessee 37027.

# III.
# Facts

9. Syneos is a biopharmaceutical company with employees located in various states including the State of Tennessee.

10. Randy Parker was hired by Syneos in 2013, and served as a District Manager. He relocated to the State of Tennessee in 2015, where he continued to work remotely from his home as a manager of pharmaceutical sales representatives in various locations around the country.

11. Mr. Parker's base salary was $140,000.00 per year, with additional work-based bonusses each year.

12. During his tenure at Syneos, Mr. Parker received extremely positive reviews, with no demerits or concerns about his work.

13. Since at least November of 2019, Mr. Parker has worked remotely from his home in Williamson County, Tennessee full time. His role included managing pharmaceutical sales representatives in the State of New York which he has been able to accomplish via live phone calls, WebEx Meetings and text messaging.

14. On October 20, 2021, Syneos' General Counsel and Corporate Secretary, Jonathan Olefson, sent an email to all of the company's U.S.-based corporate, commercial and clinical employees advising them of a deadline of October 22, 2021, within which to upload to the company's website their personal

COVID-19 vaccination information proving receipt of the experimental COVID-19 vaccine.

15. Jonathan Olefson's email included a link and form for employees so desiring to submit an on-line request for accommodation in the form of either a medical or religious exemption.

16. On October 19, 2021, Mr. Parker submitted an online request for religious exemption from Syneos' vaccination requirement. His accommodation request cited the following sincerely held religious objection to taking the COVID-19 vaccination:

> This is to inform you that I am opposed to taking the COVID-19 vaccines based on my religious beliefs. As a Christian, I believe that the COVID-19 vaccines violate God's will as revealed in the Bible. The Bible clearly teaches that human beings are made in the image of God (Genesis 1:26-27) and thus all human life is sacred. The bible also teaches that human life begins at conception. (Psalm 139:13-16).
>
> I am opposed to vaccines that utilize fetal cell lines in any part of the process of development, confirmation and production of the vaccines. These vaccines are dependent upon the cells of aborted babies which I believe is forbidden by God.
>
> This is my sincerely held belief which prevents me from taking the COVID-19 vaccines.

17. In a letter dated December 9, 2021, from Nicole Blum, Director of HR for Syneos, Mr. Parker was informed that he was being granted a "temporary accommodation" through January 31, 2022, and that he had until January 14, 2022, within which to obtain his first COVID-19 vaccination and upload his vaccination card or face termination by Syneos.

18. The December 9, 2021 letter from Ms. Blum also instructed Mr. Parker that pending his compliance with the vaccine mandate, he was subject to certain restrictions that were not required of vaccinated employees:

> During this time, you are not allowed to enter any US Syneos office building. If you are <u>required</u> to attend an in-person Company meeting or function that is not at a Syneos office, you will be expected to comply with Syneos' safety protocols, along with all safety protocols of the local jurisdiction and client requirements, which may include masking, testing and social distancing.

19. In addition, Ms. Blum stated that Syneos reserved the right to unilaterally rescind the so-called "temporary accommodation" with no notice and for any reason.

> Please understand that we are able to provide this temporary accommodation <u>at this time</u> and it may be subject to change as the cumulative effect of accommodating unvaccinated employees rises to the level of an undue hardship on the company. Syneos Health may revisit this working arrangement at any time and reserves the right to unilaterally rescind the accommodation with no notice and for any reason.

20. On January 31, 2022, Syneos terminated Mr. Parker's employment based on his failure to upload to its website proof that he had received the COVID-19 vaccine.

21. From a religious perspective, the reason that Mr. Parker objects to the vaccine on religious grounds is because the four most widely used COVID-19 vaccines across the globe all used abortion-derived fetal cell lines in their research, development, production and/or testing. Those vaccines are: AstraZeneca/Oxford, Janssen/Johnson & Johnson, Moderna, Pfizer/BioNTech. AstraZeneca/Oxford and Janssen/Johnson & Johnson, used abortion-derived fetal cell lines in all phases of their vaccine production; in their research, development, production, and testing.

Modern and Pfizer/BioNTech used abortion-derived fetal cell lines in the testing of their COVID-19 vaccines. [1]

22. Three different abortion-derived fetal cell lines were used in the four COVID-19 vaccines: HEK-293, PER.C6 and MRC-5. AstraZeneca/Oxford used two fetal cell lines in the making of its vaccine: HEK-293 and MRC-5. Jansen/Johnson & Johnson used PER.C6. Moderna used HEK-293. And Pfizer/BioNTech used HEK-293T/17 (a derivative of HEK-293T, which is a derivative of HEK-293.[2]

23. In addition, the Plaintiff has serious medical concerns based on recent and evolving medical information regarding both the efficacy and the safety of these vaccines. On January 2, 2022, while Mr. Parker was still protected by the "temporary accommodation", United States District Judge Mark T. Pittman ordered that the Food and Drug Administration release thousands of pages of documents it relied on to license its COVID-19 vaccine. The order stems from a Freedom of Information Act document lawsuit by a coalition of doctors and scientists with the nonprofit Public Health and Medical Professionals for Transparency. *Public Health and Medical Professionals for Transparency v. Food and Drug Administration,* No. 4:21-CV-01058-P, (N.D.Tex. Jan. 6, 2022).[3]

---

[1] Admin, "2021 Update: COVID-19 Vaccines Using Aborted Fetal Cell Lines," A Voice For Truth, (November 14, 2021), https://avoicefortruth.com/2021-update-covid-19-vaccines-using-aborted-fetal-cell-lines/

[2] Admin, "2021 Update: COVID-19 Vaccines Using Aborted Fetal Cell Lines," A Voice For Truth, (November 14, 2021), https://avoicefortruth.com/2021-update-covid-19-vaccines-using-aborted-fetal-cell-lines/

[3] https://fingfx.thomsonreuters.com/gfx/legaldocs/gdvzykdllpw/Pittman%20FOIA%20Order.pdf

24.     Judge Pittman ordered the FDA to turn over 55,000 pages of documents a month. More than 12,000 pages were due before January 31, 2022; and the first production of documents were due on or before March 1, 2022, until this court-ordered document production is complete. Currently, all of the Pfizer vaccine data will be made public for the first time by the end of September 2022.

25.     On March 1, 2022, the FDA released its initial batch consisting of approximately 55,000 pages of documents.  This release is the first time the American public has had access to this data that Pfizer submitted to the FDA from its clinical trials in support of a Covid-19 vaccine license.

26.     In a 38-page document titled 5.3.6 CUMMULATIVE ANALYSIS OF POST-AUTHORIZATION ADVERSE EVENT REPORTS OF PF-07302048 (BNT162B2) RECEIVED THROUGH 28-FEB-2021[4], Pfizer admitted that when it applied for FDA approval, it was aware of almost 158,000 adverse events. This document also features an appendix with a list which reports that Pfizer's Covid vaccine has a range of 1,291 possible side effects.

27.     The list of side effects from the Pfizer vaccine include: acute kidney injury, acute flaccid myelitis, anti-sperm antibody positive, brain stem embolism, brain stem thrombosis, cardiac arrest, cardiac failure, cardiac ventricular thrombosis, cardiogenic shock, central nervous system vasculitis, death neonatal,

---

[4] 5.3.6 CUMMULATIVE ANALYSIS OF POST-AUTHORIZATION ADEVERSE EVENT REPORTS OF PF-07302048 (BNT162B2) RECEIVED THROUGH 28-FEB-2021,
https://www.riotimesonline.com/wp-content/uploads/2022/03/Pfizer-real-data-released.pdf

*Complaint - 7*

deep vein thrombosis, encephalitis brain stem, encephalitis hemorrhagic, frontal lobe epilepsy, foaming at mouth, epileptic psychosis, facial paralysis, fetal distress syndrome, gastrointestinal amyloidosis, generalized tonic-clonic seizure, Hashimoto's encephalopathy, hepatic vascular thrombosis, herpes zoster reactivation, immune-mediated hepatitis, interstitial lung disease, jugular vein embolism, juvenile myoclonic epilepsy, liver injury, low birth weight, multisystem inflammatory syndrome in children, myocarditis, neonatal seizure, pancreatitis, pneumonia, stillbirth, tachycardia, temporal lobe epilepsy, testicular autoimmunity, thrombotic cerebral infarction, Type 1 diabetes mellitus, venous thrombosis neonatal, and vertebral artery thrombosis among 1,246 other medical conditions following vaccination.

28. This document demonstrates that people aged 31-50 fare the worst after getting injected with the Pfizer vaccine. And women appear to suffer far more damage from the vaccine compared to men, according to the data, as do both men and women between the ages of 31 and 50. People in the 51-64 years old demographic are next in line, followed by the elderly and younger people between the ages of 18-30.

29. A naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab*., No. 21-60845, 2021 WL 5279381, at *6 (5th Cir. Nov. 12, 2021).

30. "The power to require or regulate a person's choice in the mode of securing healthcare services, or to impose a penalty related thereto, is not found in the Constitution of the United States, and is therefore a power reserved to the people pursuant to the ninth amendment, and to the several states pursuant to the tenth amendment. This state hereby exercises its sovereign power to declare the public policy of this state regarding the right of all persons residing in this state in choosing the mode of securing healthcare services." Tenn. Code Ann. § 56-7-1016(c)(1),

31. And under Tenn. Code Ann. § 56-7-1016 (c)(2), "[i]t is declared that the public policy of this state, consistent with our constitutionally-recognized and inalienable right of liberty, is that every person within this state is and shall be free to choose or to decline to choose any mode of securing healthcare services without penalty or threat of penalty."

### IV.
### CAUSES OF ACTION
### COUNT I
### Violation of Tenn. Code Ann. § 14-2-102
### COVID-19 Vaccine Status

32. The preceding paragraphs are incorporated by reference as if set forth fully herein.

33. On November 12, 2021, the Tennessee General Assembly enacted Tenn. Code. Ann. § 14-1-102, *et seq.* which protects citizens of the State of

Tennessee and provides a safe harbor against the loss or threatened loss of employment for refusal to submit to any form of medical treatment.

34. The findings of the Tennessee General Assembly in its enactment of this legislation are stated in Tenn. Code Ann. § 14-1-102:

**Tenn. Code Ann. § 14-1-102. Findings.**

The general assembly finds that:

(1) Setting forth the right of people in the context of COVID-19 restrictions in a statute assists the citizens of this state in the enforcement and protection of their rights and creates a safe harbor for those desiring to avoid litigation;

(2) Tennessee, as a great southern state within our federal system of government, is free to enact laws to protect the health and safety of its citizens under the police powers inherent to all states of a federal system of government;

(3) The United States Constitution does not prohibit the states from regulating health and medical practices, nor does it require any person to consent to any form of medical treatment, directly or indirectly, in relation to COVID-19;

(4) The right at common law to personal security and the liberty to be free from an unwanted touching of one's limbs and body was retained by the people of this state, and that right includes rights and duties with respect to medical treatment administered by other persons, such as through COVID-19 vaccinations;

(5) Informed consent between patients and healthcare practitioners protects the rights at common law of persons and all such consent must be voluntary and not given under duress, coercion, misrepresentation, or fraud; and

(6) Consistent with our constitutionally recognized and inalienable right of liberty, every person within this state is and must remain free to choose or to decline to be vaccinated against COVID-19 without penalty or threat of penalty.

2021 Pub. Acts (3rd Ex. Sess.), c. 6 §1, eff. Nov. 12, 2021.

35. The General Assembly further provided for a private right of action by those citizens directly impacted by a threatened and coercive vaccine mandate, such as Mr. Parker in this case who has been terminated from his employment because he refused to consent to this medical treatment.

36. The remedies afforded in Tenn. Code Ann. § 14-6-103 are as follows:

**Tenn. Code Ann. § 14-6-103. Remedies.**

A person injured as a result of a violation of chapter 2 or § 14-4-103 of this title is entitled to maintain a private right of action for injunctive relief and to recover compensatory damages and reasonable attorney's fees against an alleged violator.

2021 Pub. Acts (3rd Ex. Sess.), c.6, §1, eff. Nov. 12, 2021.

37. The Plaintiff Randy Parker was terminated from his employment because he would not submit to an involuntary medical procedure as a condition of maintaining his livelihood.

38. The Plaintiff Randy Parker has been injured, and faces further and imminent injury by virtue of Syneos's coercive policy and termination due to his religious inability to submit to a medical procedure, *i.e.*, inject into his body a foreign substance that is still experimental and not FDA approved, and which would further violate his sincerely held religious beliefs.

39. The actions of Syneos constitute adverse employment action and has further and proximately caused the Plaintiff Randy Parker to suffer economic injury, mental anguish, humiliation and embarrassment as well as other emotional injury.

## COUNT II
## Tennessee Human Rights Act
## Tenn. Code Ann. § 4-21-101, *et seq.*

40. Plaintiff incorporates by reference herein the allegations contained in the previous paragraphs as fully as though set forth verbatim, and does further allege as follows.

41. The Tennessee Human Rights Act ("the Act") is a comprehensive anti-discrimination law, *Phillips v. Interstate Hotels Corp.*, 974 S.W.2d 680, 683 (Tenn.1998), intended to further the policies embodied in the similar federal laws against employment discrimination. Tenn. Code Ann. § 4–21–101(a)(1) (1998); *Frazier v. Heritage Fed. Bank for Savs.,* 955 S.W.2d 633, 636 n. 1 (Tenn.Ct.App.1997).

42. The Act proscribes discriminatory employment practices with respect to the compensation, terms, conditions, or privileges of employment based on considerations of race, creed, color, religion, sex, age, or national origin. Tenn. Code Ann. § 4–21–101(a)(3).

43. Tennessee's courts regularly consult and apply the decisions of their federal counterparts for guidance when called upon to construe and apply the Tennessee Human Rights Act. *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn.1996); *Frazier v. Heritage Fed. Bank for Savs.*, 955 S.W.2d at 636 n. 1.6.

44. The actions of the Defendant in failing to reasonably accommodate the Plaintiff's sincerely held religious beliefs constitute a discriminatory practice in violation of the Act.

45. As a direct and proximate consequence of the Defendant's discriminatory practice, the Plaintiff has suffered, and continues to suffer, economic injury, loss of earnings and other compensation, emotional injury, humiliation, embarrassment and mental anguish for which he is entitled to an award of compensatory damages.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. That pursuant to Tenn. Code Ann. § 14-6-103, Plaintiff Randy Parker, be awarded compensatory damages against Syneos in the amount of Five Hundred Thousand Dollars, ($500,000.00) together with his costs and reasonable attorney's fees;

b. That pursuant to Tenn. Code Ann. § 4-21-101, *et seq.,* the Plaintiff be awarded compensatory damages arising out of the Defendant's discriminatory employment practices;

c. That Plaintiff have and recover nominal damages;

d. Such other and further relief as this Court may deem just and appropriate, including costs and reasonable attorney's fees as allowed under Tenn. Code Ann. § 14-6-103 and Tenn. Code Ann. § 4-21-101, *et seq.*

# DEMAND FOR JURY

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully Submitted,

*/s/ Larry L. Crain*_____
**Larry L. Crain** TN Bar No. 9040
**CRAIN LAW GROUP, PLLC**
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 376-2600
Fax: (615) 345-6009
Email: larry@crainlaw.legal

*/s/ Emily Castro*
**Emily Castro** TN Bar No. 028203
**CRAIN LAW GROUP, PLLC**
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 376-2600
Fax: (615) 345-6009
Email: emily@crainlaw.legal

*Attorneys for the Plaintiff*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Amended Complaint was served on the following individuals listed below on this the 20th day of April, 2022, via the Court's ECF-Filing System:

Jonathan O. Harris
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
401 Commerce Street, Suite 1200
Nashville, TN 37219

*/s/ Larry L. Crain*
Larry L. Crain

*Complaint - 14*
Case 3:22-cv-00282   Document 6   Filed 04/20/22   Page 14 of 14 PageID #: 44